## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AUSTIN BAUGHMAN, Individually and On Behalf of All Others Similarly Situated, | ) ) **Case No.** |
| | ) |
| Plaintiff, | ) **COMPLAINT FOR VIOLATION OF** ) **THE FEDERAL SECURITIES LAWS** |
| | ) |
| v. | ) **DEMAND FOR JURY TRIAL** |
| | ) |
| PSYCHEMEDICS CORPORATION, RAYMOND C. KUBACKI JR., and NEIL LERNER, | ) ) ) ) |
| | ) |
| Defendants. | ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Austin Baughman ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Psychemedics Corporation ("Psychemedics" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Psychemedics securities between February 28, 2014 and January 30, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Psychemedics Corporation provides patented, FDA-cleared services for the detection of drug abuse through the analysis of hair samples. The Company's tests provide quantitative information that can indicate the approximate amount of drug ingested, as well as historical data, which can show a pattern of individual drug use over a longer period of time.

3.      The Company was founded in 1985 and is based in Acton, Massachusetts. Psychemedics' stock trades on the Nasdaq Capital Market ("NASDAQ") under the ticker symbol "PMD."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) through its affiliate Psychemedics Brasil Exames Toxicológicos Ltda. ("Psychemedics Brasil"), the Company engaged in anticompetitive conduct to maintain a monopoly over the Brazilian market in violation of the law; (ii) in turn, Psychemedics lacked effective internal controls over financial reporting; and (iii) as a result of the foregoing, Psychemedics' public statements were materially false and misleading at all relevant times

5.      On January 31, 2017, *Bloomberg* reported that a Brazilian judge had ordered Psychemedics' local representative in Brazil, Psychemedics Brasil, to compensate Omega Laboratories, Inc. USA for losses caused by anticompetitive practices used for the purpose of "preventing other companies from accessing (the) market," an indemnification that may cost the Company millions of dollars.  The *Bloomberg* article further reported that Psychemedics Brasil may be further investigated by Brazil's Administrative Council for Economic Defense for engaging in "cartel practices" in an attempt to form a drug testing monopoly.

6.      Psychemedics issued a press release in response to the Brazilian court order denying involvement in the lawsuit, stating that "Psychemedics Brasil has been a distributor of Psychemedics Corporation's hair testing services for more than fifteen years" and that it expects their business in Brazil to "continue as usual."

7.      On this news, Psychemedics' share price fell $6.75, or 26.35%, to close at $18.87 on January 31, 2017.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act (15 U.S.C. § 78aa).

3

11.     Venue is properly laid in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b).  The acts and conduct complained of herein occurred in substantial part in this District.

12.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

13.     Plaintiff, as set forth in the attached Certification, acquired Psychemedics securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.     Defendant Psychemedics is incorporated in Delaware. The Company's principal executive offices are located at 125 Nagog Park, Suite 200, Acton, Massachusetts 01720. Psychemedics' shares trade on the NASDAQ under the ticker symbol "PMD."

15.     Defendant Raymond C. Kubacki Jr. ("Kubacki") has served at all relevant times as the Company's Chief Executive Officer, President and Chairman.

16.     Defendant Neil Lerner ("Lerner") has served at all relevant times as the Company's Vice President and as the Financial and Accounting Officer.

17.     The Defendants referenced above in ¶¶ 15-16 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

4

18.     Psychemedics Corporation provides patented, FDA-cleared services for the detection of drug abuse through the analysis of hair samples. The company's tests provide quantitative information that can indicate the approximate amount of drug ingested, as well as historical data, which can show a pattern of individual drug use over a longer period of time.

**Materially False and Misleading Statements Issued During the Class Period**

19.     The Class Period begins on February 28, 2014, when Psychemedics filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2013 (the "2013 10-K").   For the quarter, Psychemedics reported net income of $870,000, or $0.16 per diluted share, on revenue of $6.48 million, compared to net income of $270,000, or $0.05 per diluted share, on revenue of $5.66 million for the same period in the prior year.  For fiscal year 2013, Psychemedics reported net income of $3.81 million or $0.72 per diluted share, on revenue of $26.87 million, compared to net income of $2.98 million, or $0.57 per diluted share, on revenue of $25.22 million for fiscal year 2012.

20.     In the 2013 10-K, Psychemedics stated in pertinent part:

**Competition**

The Company competes directly with numerous commercial laboratories that test for drugs primarily through urinalysis testing. Most of these laboratories, such as Quest Diagnostics, have substantially greater financial resources, market identity, marketing organizations, facilities, and more personnel than the Company. The Company has been steadily increasing its base of corporate customers and believes that future success with new customers is dependent on the Company's ability to communicate the advantages of implementing a drug program utilizing the Company's patented hair analysis method.

The Company's ability to compete is also a function of pricing. The Company's prices for its tests are generally somewhat higher than prices for tests using urinalysis. However, the Company believes that its superior detection rates, coupled with the customer's ability to test less frequently due to hair testing's wider window of detection (several months versus approximately three days with

urinalysis), provide more value to the customer. This pricing policy could, however, lead to slower sales growth for the Company.

The Company also competes with other hair testing laboratories. The Company distinguishes itself from hair testing competitors by emphasizing the superior results the Company obtains through use of its unique patented extraction method (getting drug out of the hair), in combination with the Company's FDA cleared immunoassay screen.

In addition, Psychemedics is the only laboratory with FDA clearance for a five-drug panel test that is not limited to head hair samples for drugs of abuse. To date, no other laboratory engaged in hair testing has received approval or clearance from the FDA on all of its assays for the testing of both head and body hair samples (two other laboratories have either partial FDA clearance or clearance specific to head hair samples only).

21.     The 2013 10-K contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants stating that the financial information contained in the 2013 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

22.     On May 1, 2014, Psychemedics filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2014 (the "Q1 2014 10-Q"). For the quarter, Psychemedics reported net income of $760,000, or $0.14 per diluted share, on revenue of $7.05 million, compared to net income of $820,000, or $0.16 per diluted share, on revenue of $6.43 million for the same period in the prior year.

23.     The Q1 2014 10-Q contained certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q1 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.     On July 28, 2014, Psychemedics issued a news release, filed on Form 8-K with the SEC, entitled "Psychemedics Corporation announces record revenues." In the news release, Defendant Kubacki stated in part:

"As we previously noted, the Company will be competing for hair testing business in Brazil. The Brazilian Federal Government had announced new regulations that will require professional drivers in the transportation industry to pass a hair drug test when obtaining or renewing their driver's license. The testing was slated to begin July 1, 2014. We now understand the government will be moving the start date for testing.

However, the more important significant news is that the Brazilian Congress has included in a broader transportation bill, a requirement that professional drivers be drug tested on a more rigorous basis than the requirements under the prior regulation, utilizing technology that is favorable to hair testing. Once the bill becomes law, it would go into effect 90 days after the President's signature and official publication. It appears that the implementation of the existing regulation has been delayed to coordinate with the new proposed law. If the bill does not become law, the existing regulation would remain in effect, and would be implemented on a time table to be determined.

Because of the Brazil opportunity, we also noted that we expected earnings in the first half of 2014 to be unfavorably impacted by additional costs required to increase capacity related to this significant opportunity, with the greater proportion coming in the second quarter. We estimate that the impact on second quarter earnings was about $0.08 per share. This is less than expected as we adjusted our hiring schedule. However, due to the change in timing of this opportunity, we now expect the ramp-up of our hiring to have some impact on our third and fourth quarter earnings.

This is an exciting opportunity. In addressing the capital requirements for this opportunity, in the second quarter of 2014, the Company borrowed $4.9 million of equipment financing as part of a financing arrangement made in the first quarter. This brings the total amount borrowed to $6.0 million at a very favorable interest rate of 2.15%. With the additional leased space and over $6 million spent on equipment and leasehold improvements, the Company has significantly increased its production capacity to handle future growth."

25.     On July 30, 2014, Psychemedics filed a quarterly report on Form 10-Q with the

SEC, announcing the Company's financial and operating results for the quarter ended June 30,

2014 (the "Q2 2014 10-Q").  For the quarter, Psychemedics reported net income of $860,000, or

$0.16 per diluted share, on revenue of $7.69 million, compared to net income of $1.06 million, or

$0.20 per diluted share, on revenue of $6.90 million for the same period in the prior year.

26.     The Q2 2014 10-Q contained certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q2 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.     On October 31, 2014, Psychemedics filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2014 (the "Q3 2014 10-Q").  For the quarter, Psychemedics reported net income of $920,000, or $0.17 per diluted share, on revenue of $7.70 million, compared to net income of $1.05 million, or $0.20 per diluted share, on revenue of $7.06 million for the same period in the prior year.

28.     The Q3 2014 10-Q contained certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q3 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.     On February 27, 2015, Psychemedics filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2014 (the "2014 10-K").   For the quarter, Psychemedics reported net income of $680,000, or $0.13per diluted share, on revenue of $6.76 million, compared to net income of $870,000 or $0.16 per diluted share, on revenue of $6.48 million for the same period in the prior year.  For fiscal year 2014, Psychemedics reported net income of $3.21 million or $0.60 per diluted share, on revenue of $29.21 million, compared to a net income of $3.81 million, or $0.72 per diluted share, on revenue of $26.87 million for fiscal year 2013.

30.     In the 2014 10-K, Psychemedics stated in part:

**Competition**

The Company competes directly with numerous commercial laboratories that test for drugs primarily through urinalysis testing. Most of these laboratories, such as Quest Diagnostics, have substantially greater financial resources, market identity,

marketing organizations, facilities, and more personnel than the Company. The Company has been steadily increasing its base of corporate customers and believes that future success with new customers is dependent on the Company's ability to communicate the advantages of implementing a drug program utilizing the Company's patented hair analysis method.

The Company's ability to compete is also a function of pricing. The Company's prices for its tests are generally somewhat higher than prices for tests using urinalysis. However, the Company believes that its superior detection rates, coupled with the customer's ability to test less frequently due to hair testing's wider window of detection (several months versus approximately three days with urinalysis), provide more value to the customer. This pricing policy could, however, lead to slower sales growth for the Company.

The Company also competes with other hair testing laboratories. The Company distinguishes itself from hair testing competitors by emphasizing the superior results the Company obtains through use of its unique patented extraction method (getting drug out of the hair), in combination with the Company's FDA cleared immunoassay screen.

31.    The 2014 10-K contained certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the 2014 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

32.    On May 1, 2015, Psychemedics filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q1 2015 10-Q").  For the quarter, Psychemedics reported net income of $280,000, or $0.05 per diluted share, on revenue of $6.76 million, compared to net income of $760,000, or $0.14 per diluted share, on revenue of $7.05 million for the same period in the prior year.

33.    The Q1 2015 10-Q contained certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q1 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

34.    On July 31, 2015, Psychemedics filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 10-Q").  For the quarter, Psychemedics reported net income of $250,000, or

$0.05 per diluted share, on revenue of $7 million, compared to net income of $860,000, or $0.16 per diluted share, on revenue of $7.69 million for the same period in the prior year.

35.    The Q2 2015 10-Q contained certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

36.    On October 29, 2015, Psychemedics filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2015 (the "Q3 2015 10-Q").  For the quarter, Psychemedics reported net income of $800,000, or $0.15 per diluted share, on revenue of $7.08 million, compared to net income of $920,000, or $0.17 per diluted share, on revenue of $7.70 million for the same period in the prior year.

37.    The Q3 2015 10-Q contained certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q3 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

38.    On February 26, 2016, Psychemedics filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2015 (the "2015 10-K").   For the quarter, Psychemedics reported net income of $190,000, or $0.03 per diluted share, on revenue of $6.13 million, compared to net income of $680,000, or $0.13 per diluted share, on revenue of $6.76 million for the same period in the prior year.  For fiscal year 2015, Psychemedics reported net income of $1.51 million or $0.28 per diluted share, on revenue of $26.98 million, compared to net income of $3.21 million, or $0.60 per diluted share, on revenue of $29.21 million for fiscal year 2014.

39.    In the 2015 10-K, Psychemedics stated in part:

**Competition**

The Company competes directly with numerous commercial laboratories that test for drugs primarily through urinalysis testing. Most of these laboratories, such as Quest Diagnostics, have substantially greater financial resources, market identity, marketing organizations, facilities, and more personnel than the Company. The Company has been steadily increasing its base of corporate customers and believes that future success with new customers is dependent on the Company's ability to communicate the advantages of implementing a drug program utilizing the Company's patented hair analysis method.

…

The Company also competes with other hair testing laboratories. The Company distinguishes itself from hair testing competitors by emphasizing the superior results the Company obtains through use of its unique patented extraction method (getting drug out of the hair), in combination with the Company's FDA cleared immunoassay screen.

40.    The 2015 10-K contained certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the 2015 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

41.    On April 26, 2016, Psychemedics issued a news released, filed on Form 8-K with the SEC, entitled "Psychemedics Corporation announces quarterly results." In the news release, Defendant Kubacki stated in part:

"While our bottom line was also impacted by the on-going capacity expansion and ramp up costs related to anticipated new business from Brazil, the good news is that the Brazil legislated testing, requiring professional drivers in the transportation industry to pass a hair drug test, has started. As we anticipated, the ramp up period is more gradual as this is a major new program and some of the states in Brazil are requiring additional time to implement the law. In addition, the requirement to test professional drivers when being hired or fired was delayed to April 16, 2016. As a result, there were a relatively small number of tests received at the end of March 2016, but we are already seeing a meaningful pickup of testing volume in the second quarter. ***We are excited about this opportunity in Brazil and are aggressively competing for a share of this potential business.*** As a result, we had additional ramp up costs in the quarter to support the anticipated new business which had a negative effect on Q1 2016 profitability. The estimated impact on the quarter earnings from the increase in capacity and ramp up costs related to the Brazil opportunity was about $0.10 per share."

11

(Emphasis added.)

42.     On April 28, 2016, Psychemedics filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 10-Q").  For the quarter, Psychemedics reported a net loss of $20,000, or $0.00 per diluted share, on revenue of $6.67 million, compared to net income of $280,000, or $0.05 per diluted share, on revenue of $6.78 million for the same period in the prior year.

43.     In the Q1 2016 10-Q, Psychemedics stated in part:

**OVERVIEW**

Revenues for the first quarter of 2016 were $6.7 million, a decrease of 1% from first quarter 2015 revenue of $6.8 million. The Company operated near break-even level for the first three months of 2016, recording a loss of $23 thousand compared to a gain of $278 thousand for the same period in 2015. The decrease in earnings was a result of ongoing capacity expansion and ramp up costs in anticipation of future testing volumes from an opportunity in which the Brazilian government has mandated drug testing for professional drivers. While some testing from this Brazil opportunity started in March, the law was not fully implemented as of March 31, 2016. The Company had $2.0 million of cash as of March 31, 2016. The Company has borrowed $8.7 million through an equipment financing arrangement for the purchase of additional equipment related to expanding capacity. At March 31, 2016, the balance on the notes underlying the equipment financing agreement totaled $6.1 million. The Company distributed $813 thousand or $0.15 per share of cash dividends to its shareholders in the three months ended March 31, 2016. The Company has paid 78 consecutive quarterly cash dividends.

44.     The Q1 2016 10-Q contained certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

45.     On July 26, 2016, Psychemedics issued a news release, filed on Form 8-K with the SEC, entitled "Psychemedics Corporation announces record revenues and earnings." In the news release, Defendant Kubacki stated in part:

"We have noted since 2013 a significant opportunity in Brazil, and are very pleased to begin to see the results of our efforts and the efforts of our exclusive

independent Brazilian distributor, Psychemedics Brasil. This opportunity is to compete for the testing of drugs of abuse required for professional drivers in Brazil. As of March 2016, testing for this opportunity had begun and is being phased in as some states have required additional time to implement the law. Over the last two years, we have made significant investments in equipment, people and an additional facility to handle this business. In the recent past, these investments have impacted earnings and required the Company to take on long term debt. We are pleased about the very positive impact this opportunity had on the revenue and earnings this quarter."

46.     On July 28, 2016, Psychemedics filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 2016 10-Q"). For the quarter, Psychemedics reported net income of $1.63 million, or $0.30 per diluted share, on revenue of $9.70 million, compared to net income of $250,000, or $0.05 per diluted share, on revenue of $7 million for the same period in the prior year.

47.     In the Q2 2016 10-Q, Psychemedics stated in part:

**OVERVIEW**

Revenues for the second quarter of 2016 were $9.7 million, an increase of 39% from second quarter 2015 revenue of $7.0 million. The Company reported net income of $1.6 million, or $0.30 per diluted share for the three months ended June 30, 2016 versus $252 thousand, or $0.05 per diluted share for the same period in 2015, an increase of 547%. The increase in revenue and earnings was primarily the result of higher testing volume from Brazil. The Brazil opportunity derived from the implementation of a recently passed Brazilian law requiring a hair drug test for all professional drivers in the country that began to take effect in March 2016. The Company distributed $1.6 million or $0.30 per share of cash dividends to its shareholders in the six months ended June 30, 2016. The Company has paid 79 consecutive quarterly cash dividends.

48.     The Q2 2016 10-Q contained certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

49.    On October 26, 2016, Psychemedics issued a news release, filed on Form 8-K with the SEC, entitled "Psychemedics Corporation announces record revenues and earnings."  In the news release, Defendant Kubacki stated in part:

"For the second quarter in a row, we had record sales and earnings for any quarter in the Company's history. The growth has been driven by our international business, specifically professional driver testing in Brazil. We have noted since 2013 a significant opportunity in Brazil, and are very pleased to see the results of our efforts and the efforts of our exclusive independent Brazilian distributor, Psychemedics Brasil. This opportunity is to compete for the testing of drugs of abuse required for professional drivers in Brazil.  In the second quarter of this year, we noted that testing for drugs of abuse for professional drivers in Brazil had begun. We also noted that some of the Brazilian states had required additional time to implement the law. In this quarter, we had virtually all of the states begin testing and this had a very positive impact on the revenue and earnings for the quarter. In addition, this mandated program is showing significantly positive results for Brazil. The Technology Institute for Road Safety did a study, in parallel with the Federal Highway Police that found from March to July the number of accidents involving trucks on federal roads in the country decreased by 38%, from 18,000 to 11,000, compared to the same period last year."

50.    On October 27, 2016, Psychemedics filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q3 2016 10-Q").  For the quarter, Psychemedics reported net income of $2.71 million, or $0.49 per diluted share, on revenue of $11.85 million, compared to net income of $800,000, or $0.15 per diluted share, on revenue of $7.08 million for the same period in the prior year.

51.    In the Q3 2016 10-Q, Psychemedics stated in pertinent part:

**Overview**

Revenues for the third quarter of 2016 were $11.8 million, an increase of 67% from third quarter 2015 revenue of $7.1 million. The Company reported net income of $2.7 million, or $0.49 per diluted share for the three months ended September 30, 2016 versus $796 thousand, or $0.15 per diluted share for the same period in 2015, an increase of 240%. ***The increase in revenue and earnings was primarily the result of higher testing volume from Brazil.*** The Brazil opportunity derived from the implementation of a recently passed Brazilian law requiring a hair drug test for all professional drivers in the country that began to take effect in

14

March 2016. The Company distributed $2.5 million or $0.45 per share of cash dividends to its shareholders in the nine months ended September 30, 2016. The Company has paid 80 consecutive quarterly cash dividends.

(Emphasis added.)

52.    The Q3 2016 10-Q contained certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q3 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

53.    The statements referenced in ¶¶ 19-52 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) through its affiliate Psychemedics Brasil, the Company engaged in anticompetitive conduct to maintain a monopoly over the Brazilian market in violation of the law; (ii) in turn, Psychemedics lacked effective internal controls over financial reporting; and (iii) as a result of the foregoing, Psychemedics' public statements were materially false and misleading at all relevant times

### The Truth Emerges

54.    On January 31, 2017, *Bloomberg* reported that a Brazilian judge ordered Psychemedics' local representative in Brazil, Psychemedics Brasil, to compensate Omega Laboratories, Inc. USA for losses caused by anticompetitive practices used for the purpose of "preventing other companies from accessing (the) market," an indemnification that may cost the Company millions of dollars.  The *Bloomberg* article further reported that Psychemedics Brasil may be further investigated by Brazil's Administrative Council for Economic Defense for engaging in "cartel practices" in an attempt to form a drug testing monopoly.

55.    Psychemedics issued a press release in response to the Brazilian court order denying involvement in the lawsuit, stating that "Psychemedics Brasil has been a distributor of

Psychemedics Corporation's hair testing services for more than fifteen years" and that it expects their business in Brazil to "continue as usual."

56.     On this news, Psychemedics' share price fell $6.75, or 26.35%, to close at $18.87 on January 31, 2017.

57.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Psychemedics securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

59.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Psychemedics securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Psychemedics or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

16

60.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

61.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

62.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Psychemedics;

- whether the Individual Defendants caused Psychemedics to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Psychemedics securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

63.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by the Individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

17

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

64.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Psychemedics securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Psychemedics securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

65.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

66.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

<u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

67.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

68.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

69.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Psychemedics securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Psychemedics securities and options at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

70.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Psychemedics securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Psychemedics' finances and business prospects.

71.    By virtue of their positions at Psychemedics, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

72.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Psychemedics, the Individual Defendants had knowledge of the details of Psychemedics' internal affairs.

73.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Psychemedics.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Psychemedics' businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and

public statements, the market price of Psychemedics securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Psychemedics' business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Psychemedics securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

74.     During the Class Period, Psychemedics securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Psychemedics securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Psychemedics securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.   The market price of Psychemedics securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

75.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

76.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases,

acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

77.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.    During the Class Period, the Individual Defendants participated in the operation and management of Psychemedics, and conducted and participated, directly and indirectly, in the conduct of Psychemedics' business affairs.  Because of their senior positions, they knew the adverse non-public information about Psychemedics' misstatement of income and expenses and false financial statements.

79.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Psychemedics' financial condition and results of operations, and to correct promptly any public statements issued by Psychemedics which had become materially false or misleading.

80.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Psychemedics disseminated in the marketplace during the Class Period concerning Psychemedics' results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Psychemedics to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Psychemedics within the meaning of Section 20(a) of the Exchange Act.  In this

capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Psychemedics securities.

81.    Each of the Individual Defendants, therefore, acted as a controlling person of Psychemedics.   By reason of their senior management positions and/or being directors of Psychemedics, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Psychemedics to engage in the unlawful acts and conduct complained of herein.   Each of the Individual Defendants exercised control over the general operations of Psychemedics and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

82.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Psychemedics.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 3, 2017                    By his attorneys,

**HUTCHINGS BARSMIAN
MANDELCORN, LLP**


*/s/Theodore M. Hess-Mahan*
Theodore M. Hess-Mahan, BBO #557109
110 Cedar Street, Suite 250
Wellesley Hills, MA 02481
Telephone:  (781) 431-2231
Facsimile:  (781) 431-8726
thess-mahan@hutchingsbarsamian.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
          ahood@pomlaw.com
          hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

# Plaintiff's Certification

I, Austin Baughman, certify that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transactions in the security that is the subject of the complaint during the class period specified in the complaint are as follows:
I bought 18 shares on 01/18/2017 at $24.22

5. Plaintiff has not sought to serve, or served, as a representative party on behalf of a class under this title during the 3-year period preceding the date on which this certification is signed, except as follows:

6. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: 2/1/2017



(redacted)

**PSYCHEMEDICS CORPORATION (PMD)**                    **Baughman, Austin**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 1/18/2017 | Purchase | 18 | $24.2200 |